Miles v. Jacobs Thank you, Your Honors. This is the court in Marriott, and we have the appellate, Kelly of Nassau, and the appellate appellate is also on the board. Can I ask you a question? Is the Board of Elections a suable entity? Since both Judge Sullivan and I were, I think, pondering that question. If they're not a suable entity, the Kelly of Nassau is a suable entity. Okay. So that would then be a Monell claim, right? Excuse me? That would be a claim under Monell. Correct. And so there'd have to be a pattern of practice. Customer policy. That's right. Customer policy. Yes, or a decision-maker who did something. A decision-maker of some kind. That's correct. Okay. Somebody with the authority to make policy for the county, and I submit to the court that neither of the individuals do. And sort of... Neither of the individuals being... Well, Guggerty works for the Board of Elections. Guggerty, sorry. Or any of the... Or any... The John Doe. The John Doe. So if there were, insofar as there would have been a Board of Elections, John Doe was completely, if it's reversed, and then amended and added any individual, any of those individuals. But before we could even get to individual liability or culpability, there would actually have to be a deprivation, a constitutional deprivation, and the court clearly and, and I submit to the court respectfully, that the appellants established that there's a property or a liberty interest in being elected or the ability to be elected, and the court even went so far as to distinguish where appellants... I believe the court said it's not a matter of semantics when the appellants said, we're not actually challenging the ability to be elected, we're actually challenging or the ability to be placed on the ballot. And the court said, it doesn't matter. That is not an underlying constitutional deprivation. So before we can even get to Monell, of course, if you're not going to get to Monell, you first have to establish individual liability, culpability, and even dealing with counsel's reply about proxy clause and foreseeability and negligence issues and granted that causation does come into play, but it comes into play when you have a, you first have to establish a constitutional deprivation, and then you actually have to show that the constitutional deprivation caused harm. I submit to the court in this case, there is no constitutional deprivation because there is no right, liberty or property right to be placed on the nominating position or even for the question. Well, it's even worse than that, though, isn't it? I mean, it isn't the point that he withdrew, Mr. Miles withdrew himself from the petition process that would have put him on the ballot because he didn't understand how the process worked. But so even if there is some kind of intimidation going on, it didn't prevent him from getting on the ballot. There's no causation, right? That's correct. That's correct. And also that you can't actually claim that there was, even if we get past an assumption that there would have been some sort of liberty right to be elected, even if we get past that, Your Honor is correct, is that he was afforded due process, and the support found he was also afforded post-deprivation due process by the Article 78 proceeding. And in that proceeding, that was his due process. Whether or not he withdrew his claim, and I understand the allegations with regards to witness intimidation and everything else, you do have subpoena power, or you have the ability. Article 78 of the discovery is a little murky that a state who likes legislation to deal with that. Article 78, because it is a problem, I just, I litigated Article 78, so it doesn't matter what power you have. But you do have the power to ask the court to order a subpoena for a witness' appearance. And I understand counsel's argument to say that at that time, they didn't actually understand the implications with regards to why the witnesses were appearing, but I submit that they could have brought their own order of chauffeur to ask for a temporary restraining order over the process, and I understand the Legilogue cases working, it is very quick, but they still, there is no basis to say that they were not denied due process. They were clearly afforded due process, and they never even made the claim that they were denied the right themselves to bring their own order of 788, or to bring an order of chauffeur or TRO based on the fact that there was witness intimidation, or to submit a still-awarded subpoena to the court to ask that witnesses be called in. All they said was the witnesses didn't want to testify. You all have witnesses who don't want to testify, but that's what subpoenas are for. Let me just go back. I just want to, maybe I misunderstood what you said, but is it your argument that if, obviously you have no right to be on a ballot, but if you satisfy the criteria, and you are selected to be on the ballot, and then whatever procedures there are for removing you from the ballot are not followed, why wouldn't you have, at that point, a deprivation that could potentially at least be a Section 1983 violation, right? It's a difference, his allegations, I mean, there's other issues, but if he earned the right to be on the ballot, wouldn't the removal constitute a sufficient deprivation, if it wasn't through proper procedure, a deprivation that you could sue on? No, it's definitely no. No? No. It would be in state court, he would have the ability to challenge that in state court, but it's not, if proper procedure isn't followed, that's not a deprivation of a property or a liberty interest. It's a deprivation of due process. If state has procedures and they don't follow them, you may be able to litigate those or have process to do that in state court, but one case, I'll give you one case, the Montano case, this also deals with state action too, but it sort of frames, I think, the understanding. We join with most commentators in many law courts in holding that when the state grants political parties the right to nominate candidates and give those nominees special access to the ballot, the party's procedures constitute state action, right? Right. So if a party, you satisfy the party's procedure for getting on the ballot under that party and they have procedures for your removal then from the ballot and they ignore all those procedures, I think that could potentially be state action and a deprivation of due process. Potentially, if they ignore all of their procedures. Right. Potentially, I would agree with the court. That didn't happen in this case. In this case, not only did the Board of Elections confirm the nominated petition, in this case, the appellant elected to have his own petition. So I would agree with the court and yes, assuming that Your Honor is absolutely correct and jurisprudence would say that yes, that could potentially be a violation of due process if the party didn't follow its own procedures. But in this case, the party followed its procedures and the appellant elected not to request to be on the party's nominated petition and elected to craft their own petition and that's what they elected to do. And then, when their own petition was challenged in court and they were given due process to defend in an audit of 78, they withdrew. Thank you. Thank you. All right. Mr. Clark, you've got three minutes for rebuttal. I think that there's a misunderstanding and I want to try to clarify this in this three minutes. This model was nominated at a nominating convention from the entire Nassau County Democratic Committee. As a process of that, your name goes on to a petition that's circulated. Defendant Jacobs took his name off that designated petition without informing Mr. Miles at any point and began to circulate that petition. It wasn't until after that petition was being circulated that he realized this and started to circulate his own petition. There's a certain amount of time in which a candidate can contest the results of a nominating convention. But, number one, he was nominated so there would be nothing to contest. Number two, there's a limited time frame in which he could do that. But that wasn't discovered until after the fact that the designated petition was already circulated. But let me ask you a question. It is true that he just wasn't aware that he could have gotten on the original nominating petition even though he alleges that he was removed from it along with the two other candidates, right? Correct. And the problem is that when we go after that, I'm not an election attorney, and I discovered there was a mechanism under New York election law. Unfortunately, I was wrong because there was a certain amount of time in which he could bring that action. And that time had long since passed. But there was a period of time. He just didn't know it. So he didn't avail himself of that process to get back on the nominating petition. Correct. But he was not informed that he was taking off the designated petition until after that time had already passed. Go ahead. Go ahead. Defendant Jacobs had kept that secret from him. And it was only until after the amount of time that he would be able to challenge that under New York election law at last that he had discovered that. None of that's in the complaint, though. That's not in the complaint. Unfortunately, the complaint was drafted. And then it would be better to redraft it to clarify these issues. Well, I wanted to ask you two procedural questions in that regard. Why should plaintiff be allowed an extension of time to reserve Mr. Jacobs after the multiple opportunities that were given and after what appears to be wholly deficient affidavits of service? And then the second question, why should you be allowed to amend given that I don't believe you asked to amend below when briefing the motion to dismiss? Correct. I have a question. I would guess it's more because this is a complicated issue. And those people will determine that. I'll leave that to the judge. Go ahead. Answer. As it amounts to the matter of service, one of the reasons he was, Defendant Jacobs, was served at the Nassau County Democratic Committee headquarters. To use a vernacular, says who? Somebody. Somebody got served. It's not clear whether it's somebody who was authorized to accept service on his behalf. Right? It clearly wasn't him directly. The main issue that they said is that Defendant Jacobs is a volunteer of the Nassau County Democratic Committee. He served at the Nassau County Democratic Committee headquarters. It wasn't proper because a different case report cited him as a volunteer fireman who served at the firehouse. And this is not an analogous situation. He's the actual chairman. But let's go back for a minute. The person who was served was just an individual, an unidentified individual. Mr. My colleague, my partner, tried to clarify that in her house report. And the vice chair of the Democratic Committee indicated whom she should have the papers to. That person would not identify himself. But it wasn't Mr. Jacobs. It wasn't Mr. Jacobs. Mr. Jacobs didn't identify who this other person was and whether they were authorized to accept service on his behalf. No, correct. And this leads to a bigger problem. When this case was initially instituted, Defendant Jacobs was served at his home prior to the summons being issued. The court then found that he shouldn't serve prior to the summons being issued. And that's why we had a second chance to serve. In the interim, there was difficulties with Mr. Jacobs' staying home. He could not send someone to his home. So we attempted to serve him in that part of the place, which was his actual place of business. Do you agree? Oh, go ahead. His actual place of business being? In Nassau County, a Democratic headquarters, which the court found was not his actual place of business because he was involved here. Well, I mean, I guess the statute talks about, or the state rule talks about a person's place of business and it's a normal place of business. And so how often did he work there? Was he five days a week, 40 hours a week? Or is this someplace he dropped in twice a week for an hour? Well, but it's your burden to establish that you properly served him, right? That's the plaintiff's burden. Well, I don't know. I mean, look, it's not that tricky. People manage to conduct service on elected officials, volunteers. I mean, it's not that hard. You had a lot of time, right? The judge granted you an extension of time in which to do it, right? Well, there wasn't that much time. The judge granted me an extension of two weeks to serve both ends of July 4th weekend. It was an abbreviated amount of time. And then they should have, at some time, reissued for that service. It was a matter of days. My partner and I just served the first one. We didn't have a process to do it. So it wasn't as if there was an infinite amount of time to serve him. In a short amount of time, this is what we felt was the best process since we couldn't go to his home. Did you ask for leave to amend the complaint below? No, we didn't. Simply because at that point, the statute of limitations had been run. Had run. Had not run. Oh, I see. Had not. So what does that have to do with not asking for leave to amend? Because we believe that it was dismissed on the grounds that he wouldn't serve properly, that he would file a case, and then serve again. That was the thought process. No, no. We're talking about amending the complaint. Yeah. Because you had defendants who were still in the case. Yes, and we were going to re-serve defendants if we had a complaint that was dismissed on the grounds of processing. All right. So unless the panelists have other questions, we will reserve the decision. Thank you all. May I have a point of clarification? May I not revote without argument? No, that's OK. I think that we've heard enough. I think we've got the briefs. So we will reserve. OK. So that concludes our oral argument calendar. We have three other cases on submission. Before we adjourn, let me just thank Ms. Rodriguez, and let me thank the IT folks who have really been running this courtroom so beautifully for well over a year. It's nice to be in person, but we have managed swimmingly even with virtual argument. So that's been a tribute to the talents of the folks who make it their business to make us look good. So thanks. It's nice to be back in person. Yeah, sure. All right. Ms. Rodriguez, you can adjourn court. Court is adjourned. Thank you. Thank you.